[S. F. No. 4050.   Department Two.—November 29, 1907.]

## S. M. MONTGOMERY, Respondent, v. THOMAS THOMSON, Appellant.

CONTRACT FOR SALE OF BRUSH—NOTICE TO STOP DELIVERY—RETRACTION OF DIRECTION.—Where a written contract for the sale and delivery of brush, to be prepared for use on a levee, provides that the seller shall deliver a certain quantity and as much more as he can until stopped by notice from the purchaser, a telegram from the purchaser to the seller, directing him not to deliver more than a certain amount, did not definitely terminate the contract, so as to prevent the parties from verbally agreeing upon a retraction of the direction given in the telegram and for the delivery of further brush under the contract.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Booth & Bartnett, and W. J. Bartnett, for Appellant.

C. W. Thomas, and E. A. Bridgeford, for Respondent.

McFARLAND, J.—This is an action to recover $2620.80 and interest for an alleged balance due plaintiff from defendant for the sale by the former to the latter of a certain amount of cords of brush to be used by defendant in certain levee work at Sherman. Island. The case was tried without a jury, and the court made findings and rendered judgment as prayed for in the complaint. From the judgment and from an order denying his motion for a new trial defendant appeals.

On September 12, 1901, a written contract was executed between plaintiff as party of the first part and defendant as party of the second part. The contract provided: "That the party of the first part agrees to furnish and deliver seventeen hundred cords of brush at the Sherman Break within thirty days from the date of this instrument, barring a flood, and further agrees to use all due diligence to furnish and deliver as much more as he can until stopped by floods or by notice from party of the second part. It is distinctly understood that the brush will be landed on the bank of the Sacramento River in ample time to be delivered to Sherman, provided he can get the barges to load it on. The party of the second part agrees to pay or cause to be paid to the party of the first part $3.90 per cubic cord for each and every cord delivered at Sherman Island in the following manner on the 5th day of each month $3.50 for every cord delivered in the previous month. The forty cents per cord retained to be paid five days after the final delivery. All of the above mentioned brush to make into facines as per attached specifications." The contract then provides for the kind of brush to be used and the manner of its preparation. The brush was to be procured by plaintiff in Yolo County and shipped on barges down the river to Sherman Island, and received there and unloaded by defendant and the barges returned. The plaintiff shipped the first seventeen hundred cords, and also some other brush, which was all received by defendant and paid for. The controversy here is only about the last shipment of six hundred and seventy-two cords

on the barge Nevada. Defendant contends that he ended the contract by notice given plaintiff before the shipment of this last lot of brush; and the main question in the case is whether this contention is maintainable.

On November 13, 1901, defendant wrote to plaintiff as follows:

"November 13, 1901.

"SAM MONTGOMERY, ESQ.,
        "Woodland.

"Dear Sir:

"Enclosed please find check for $4570.55 being the amount due for the brush delivered in the month of October. With good luck (that is if I get the rock) all of the Barge Oroville's brush will be sunk and portion of the other put into mattresses, we will require from you about 1600 or 1700 more cords, the last time I saw you I understood that you were going to load about 1200 cords. We will require 4 or 500 more than that making in all about 16 or 1700. I write this so that you could make two shipments instead of one large and one small. Trusting to hear from you as early as possible, I remain,

"Yours respectfully,

"THOS. THOMSON."

Plaintiff received this letter on the next day, November 14, at 2:45 P. M., at which time he had shipped about eleven hundred of the additional seventeen hundred asked for. On the same day on which he received this letter he also received a telegram from defendant dated 2:10 P. M., November 14, as follows: "Darby has 600 cords, don't you send more than 1000." But on the next day, November 15, plaintiff went to San Francisco and saw defendant, and, according to plaintiff's testimony, the defendant took back what he had said in said telegram, and told plaintiff to send the balance of the brush down, and he "would make it all one payment next pay day." Defendant asked about what time he could get the brush down, and plaintiff said that it depended upon how soon he could get another barge, but he thought he could get it down by the 23d or 24th of November. Plaintiff went home and procured the barge, and the loading of it was completed at noon on the 23d. On November 20th defendant wrote up, "Don't ship your extra 600 cords of brush, have no use for it," but plaintiff, who was then sick at home, did not receive the letter until

CLII Cal.—21

the 23d. Defendant also wrote another letter dated November 20th to the same effect, but plaintiff did not receive this letter until November 27th. The barge reached the place of delivery at Sherman Island about the 29th of November. The brush on it was measured by defendant's agent, but defendant afterwards refused to unload it and did not use it.

Defendant contends that by the telegram of November 14th he definitely and conclusively terminated the contract, and that by his subsequent acts he did not and could not legally revive it. We do not think that this contention is maintainable. It is doubtful if the terms of the telegram could be construed, under the language of the instrument, as an absolute termination of the contract, or anything more than a desire that the sending of more brush be temporarily suspended; but it certainly did not preclude defendant, with the consent of plaintiff, from retracting or varying the direction given in the telegram and ordering further brush to be delivered under the contract. To hold otherwise would be to take a view of the matter entirely too narrow and altogether unreasonable.

There is no other point made by defendant which is tenable, or which calls for particular discussion. The delivery of the last brush was sufficient to constitute a complete sale; it was delivered in the same manner as the other brush had been delivered, and there was no other thing for plaintiff to do in order to complete it. The testimony of the plaintiff was sufficient to show that the brush was of the kind mentioned in the contract, and prepared as there prescribed; moreover, defendant made no objection on that score, but refused to unload the brush solely because he did not want it. The fact that the barge did not arrive until about the 29th, and that it contained something over six hundred cords, was not of the essence of the contract, and did not constitute the ground on which defendant refused to use the brush. We do not see any other point requiring special notice. It is to be observed that the brush which formed the subject of the contract was not a standard article in common use and having a continuous market value. It was not prepared except in cases which it was specially required and ordered for the construction and repair of levees, dams, etc.; and this consideration should be kept in view when determining the rights of the parties in the case at bar.

The judgment and order appealed from are affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.